IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CECILIA LINDSTROM** | ) | |
| Plaintiff, | ) | |
| | ) | **JURY DEMANDED** |
| v. | ) | |
| | ) | Case No: |
| **CITY OF EVANSTON** | ) | Judge: |
| Defendant. | ) | |
| | ) | Magistrate Judge: |

## COMPLAINT

Plaintiff Cecilia Lindstrom, by her undersigned attorney, files this Complaint against Defendant the City of Evanston and states the following:

## NATURE OF THE CASE

1. The basis of Plaintiff's Complaint is that she was discharged from her employment at the City of Evanston because of her disability and because of her age – over the age of 40. This directly violates the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* and The Illinois Human Rights Act, 775 ILC 5 *et seq*.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this matter pursuant to 42 U.S.C. § 12111, and this Court has supplemental jurisdiction over Plaintiff's claims under the Illinois Human Rights Act.

3. Venue is proper in the Northern District of Illinois, Eastern Division because the claim for relief arose in this jurisdictional district.

1

4. All conditions precedent have been fulfilled by Plaintiff, including timely filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Charge number 440-2017-04594) (EEOC Charge is attached hereto as Exhibit A).

5. Plaintiff received the requiste right-to-sue letter from the EEOC, entitling her to bring the action in federal court of the Northern District of Illinois. (EEOC letter is attached hereto as Exhibit B).

6. Plaintiff's EEOC Charge was cross-filed with the Illinois Department of Human Rights. Upon issuance of a Right to Sue Letter from the EEOC, Plaintiff is entitled to Administrative closure of her IDHR complaint. Thus, by letter dated October 25, 2017, Plaintiff has requested Administrative closure which allows her to pursue her IDHR claim in this action. Plaintiff expects this closure to occur promptly.

## THE PARTIES

7. Cecilia Lindstrom ("Ms. Lindstrom") resides in Evanston, Illinois.

8. The City of Evanston ("the City") is a local government body that provides services to its residents.

## THE FACTS

9. In or about November 2005, the City hired Ms. Lindstrom as an administrative assistant to the Ecology Center Manager, a part-time position.

10. In or about 2008, the City hired Ms. Lindstrom to the position of Facilities Supervisor, a part-time position within the City's Parks and Recreation department.

11. In this position, Plaintiff was responsible for oversight of rentals, customer service, and buildings, and she supervised and maintained an orderly atmosphere in the building and surrounding area.

12. Plaintiff also supervised staff, provided office and program support, and reported unsafe conditions as part of her duties.

13. Ms. Lindstrom's job description stated that her job was "primarily sendentary" but required her to "occasionally use force to exert up to 50 pounds."

14. Further, it required the "ability to lift, carry or otherwise move objects, books, materials, etc. using up to 20 pounds of force frequently."

15. During the course of her employment with the City, Ms. Lindstrom was an outstanding employee and never received any written reprimands.

16. Ms. Lindstrom received regular pay increases and strong performance reviews.

## Ms. Lindstrom Was Injured On The Job.

17. In or about February 2015, Ms. Lindstrom was injured when she fell while at work.

18. Ms. Lindstrom injured her right shoulder, neck, and right lower back and hip.

19. In or about April 2015, Ms. Lindstrom began treatment for her injuries through physical therapy and injections.

20. Ms. Lindstrom was temporarily restricted from lifting any weight because of her injuries.

21. Ms. Lindstrom continued working as Facilities Supervisor for the City throughout her treatment.

22. In accordance with standard City policy, the City maintained a custodian on staff during all rentals.

23. In the rare occasion that Ms. Lindstrom needed assistance to lift large objects, Ms. Lindstrom called the custodian on duty.

24. Ms. Lindstrom continued to receive injections, physical therapy, and massage treatment for her injuries that she received from her fall at work.

25. As her health improved, Ms. Lindstrom's physician increased the amount of weight that she was allowed to lift.

26. On or about April 22, 2016, Ms. Lindstrom's physician released her from treatment with a permanent disability and work restriction because of her previous injury at work.

27. According to her physician's orders, Ms. Lindstrom was not able to lift over forty (40) pounds unassisted because of her permanent disability and work restriction.

### The City Terminated Ms. Lindstrom's Employment.

28. In or about August 2016, Ms. Lindstrom met with Karen Hawk, former Ecology Center Manager for the City, and Bob Gustafson, the City's Human Resources and OSHA representative.

29. During the meeting, Mr. Gustafson informed Ms. Lindstrom that she needed to request an accommodation in order to receive one, but as a rule, the City does not provide permanent disabilty accommodations.

30. In or about August 2016, Ms. Lindstrom requested accommodation for her permanent disability – that she not lift fifty (50) pounds or more without assistance.

31. Ms. Lindstrom continued to perform her duties and responsibilities with no issue.

32. In rare cases in which Ms. Lindstrom needed to lift more than forty (40) pounds, a custodian on duty assisted her.

33. In or about September 2016, the City formally rejected Ms. Lindstrom's request for accommodation and required that Ms. Lindstrom get a a letter from a physician stating that she is able to lift fifty (50) pounds unassisted in order to keep her position with the City.

34. The City informed Ms. Lindstrom that if she did not get a doctor's authorization within three (3) weeks to lift more weight, it would automatically terminate her employment.

35. On or about October 12, 2016, the City informed Ms. Lindstrom that she could apply for an alternate position to accommodate her disability, otherwise it would terminate her from her position as Facilities Supervisor on or about December 31, 2016.

36. Ms. Lindstrom was only able to find one open position with the City that did not require lifting fifty (50) pounds without assistance – it was set at half of Ms. Lindstrom's payrate as Facilities Supervisor.

37. Between in or about October 2016 and on or about December 31, 2016, Ms. Lindstrom continued to perform her responsibilities as Facilities Supervisor and trained her replacement.

38. The City actually changed Ms. Lindstrom's termination date from on or about October 13, 2016 to on or about December 31, 2016 because it needed her to continue in the position of Facilities Supervisor, demonstrating that Ms. Lindstrom could perform the responsibilities of the job.

39. Indeed, Ms. Lindstrom only needed to lift heavy objects over forty (40) pounds on two (2) occasions subsequent to her injury.

40. On or about December 31, 2016, the City terminated Ms. Lindstrom's employment because of her disability.

## **COUNT I – DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE ILLINOIS HUMAN RIGHTS ACT**

41. Plaintiff incorporates paragraphs 1-40 as if fully stated herein.

42. Defendant employed Plaintiff starting in or about November 2005.

43. Plaintiff worked for Defendant for over eleven (11) years and never received formal written warnings or negative performance evaluations.

44. Plaintiff's job description stated that her position was primarily sedentary with the occasional requirement to exert force of fifty (50) pounds and the frequent requirement to exert force to lift objects of twenty (20) pounds

45. Plaintiff was injured in or about February 2015.

46. Plaintiff continued diligently working for Defendant without issues.

47. In or about April 2016, Plaintiff's physician placed Plaintiff on a permanent lifting restriction based on the injury she sustained at work.

48. Plaintiff's shoulder, neck, lower back, and hip injury impacted her movement and limited one or more major life activity.

49. Defendant became aware of Plaintiff's permanent disability in or about April 2016.

50. Plaintiff was qualified and able to complete the essential tasks of her position as Facilities Supervisor even with her lifting restrictions.

51. Indeed, Plaintiff only needed to lift forty (40) or more pounds on two (2) occasions subsequent to her injury that she sustained at work.

52. During those occasions, Plaintiff called a custodian on duty to assist with lifting heavy objects.

53. Further, Plaintiff was able to perform all the duties and responsibilities in her position from the time of her injury in April 2015 through December 2016, when Defendant formally terminated her.

54. Plaintiff was even able to train her replacement without incident.

55. Defendant terminated Plaintiff on or about December 31, 2016 because of Plaintiff's disability.

WHEREFORE, Plaintiff requests that this Court find that Defendant discriminated against Plaintiff based on her disability. Plaintiff respectfully demands a judgment against Defendant for lost wages, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any other relief this Court deems just and equitable.

## COUNT II – FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE ILLINOIS HUMAN RIGHTS ACT

56. Plaintiff incorporates paragraphs 1-55 as if fully stated herein.

57. Defendant employed Plaintiff starting in or about November 2005.

58. Plaintiff worked for Defendant without incident for over eleven (11) years.

59. Plaintiff was injured in or about February 2015.

60. Plaintiff continued diligently working for Defendant without issues and with slight accommodation - she received assistance to lift heavy objects.

61. In or about April 2016, Plaintiff's physician placed Plaintiff on permanent lifting restrictions based on the injury she sustained at work.

62. Plaintiff's shoulder, neck, lower back, and hip injury impacted her movement and limited one or more major life activity.

63. Defendant became aware of Plaintiff's permanent disability in or about April 2016.

64. From the date on which Plaintiff was injured while at work in or about February 2015 until Defendant terminated her employment, Plaintiff consistently performed her job duties without incident.

65. Plaintiff formally requested accommodation for her permanent disability in or about August 2016.

66. Indeed, Plaintiff was able to perform all her duties and responsibilities, including the following: monitor rentals, supervise and maintain orderly atmosphere in and around building, customer service, ensure safety of building/rental compliance to City code and Ecology Center policy, staff supervision, office/program support, report unsafe conditions, etc.

67. Plaintiff solely requested help on two (2) occassions from a custodian on duty.

68. Thus, there was an accommodation available to meet Plaintiff's needs – Plaintiff could continue to perform all job duties and request help from an onduty custodian on the rare occasion she needed to lift over forty (40) pounds of weight.

69. This accommodation would not have caused an undue hardship to Defendant.

70. Defendant declined to provide this accommodation to Plaintiff and instead terminated Plaintiff's employment on or about December 31, 2016.

71. Defendant discriminated against Plaintiff by failing to accommodate Plaintiff's disability.

WHEREFORE, Plaintiff requests that this Court find that Defendant discriminated against Plaintiff based on her disability by failing to accommodate Plaintiff's disability. Plaintiff respectfully demands a judgment against Defendant for lost wages, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any other relief this Court deems just and equitable.

## COUNT III – RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE ILLINOIS HUMAN RIGHTS ACT

72. Plaintiff incorporates paragraphs 1-71 as if fully stated herein.

73. In or about August 2016, Plaintiff engaged in protected activity by requesting accommodation for her disability.

74. Specifically, Plaintiff requested accommodation of her shoulder/neck and low back/hip injury and her lifting restrictions.

75. In or about October 2016, Defendant denied Plaintiff's accommodation request and instead immediately informed Plaintiff that it planned to terminate Plaintiff's employment because of Plaintiff's disability unless she was able to produce a letter from a doctor stating that she did not need an accommodation to lift fifty (50) pounds.

76. Lifting fifty (50) pounds was not actually one of Plaintiff's day-to-day job responsibilities.

77. Defendant terminated Plaintiff's employment because Plaintiff engaged in protected activity by formally requesting accommodations.

WHEREFORE, Plaintiff requests that this Court find that Defendant retaliated against Plaintiff because of her protected activity. Plaintiff respectfully demands a judgment against Defendant for lost wages, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any other relief this Court deems just and equitable.

DATE: October 25, 2017

    \_\_/s/ Karuna S. Brunk_____
Karuna S. Brunk (ARDC #6308656)
Aileen Brooks (ARDC #6230797)
Malecki & Brooks Law Group, LLC
205 East Butterfield Road, Suite 225
Elmhurst, Illinois 60126
T: (630) 948-4807
F: (630) 948-4804
kbrunk@mbhealthlaw.com
abrook@mbhealthlaw.com

## **JURY DEMAND**

NOW COMES Plaintiff Cecilia Lindstrom, by and through her attorneys, and hereby demands a trial by jury in the above entitled cause of action.

        Respectfully submitted,

        Cecilia Lindstrom

        By: /s/ Karuna S. Brunk
        *Attorney for Plaintiff Cecilia Lindstrom*

Karuna S. Brunk (ARDC #6308656)
Aileen Brooks (ARDC #6230797)
Malecki & Brooks Law Group, LLC
205 East Butterfield Road, Suite 225
Elmhurst, Illinois 60126
T: (630) 948-4807
F: (630) 948-4804
kbrunk@mbhealthlaw.com
abrooks@mbhealthlaw.com